**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| **HELENA FAHERTY,** | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | :     **CIVIL ACTION NO. 15-395** |
| | : |
| **JEH JOHNSON, Secretary,** | : |
| **U.S. Department of Homeland Security,** | : |
| **Defendant.** | : |

_____

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                              **September 21, 2016**

       Plaintiff, a former officer with the Transportation Security Administration ("TSA"), asserts that her termination was unlawfully motivated by her race and sex.[1]  After discovery, Defendant has moved for summary judgment.  For the reasons stated below, Defendant's motion will be granted.

**I.**      **BACKGROUND**

       The following facts are largely undisputed.  Plaintiff Helena Faherty had been employed as a Supervisory Transportation Security Officer at Philadelphia International Airport since 2002.  In 2007, the TSA received an anonymous letter reporting that supervisors in the Terminal B/C baggage area were coming to work late, leaving early, and "stealing" overtime to which they were not entitled.[2]  The TSA then requested that the Federal Air Marshals Service conduct an audit of payroll records.[3]  Air Marshal Jeffrey Brown, who conducted the audit, did not know

---

[1] Plaintiff's Complaint also alleged age discrimination, but she has presented no evidence on that claim.

[2] Def. Ex. 2.

[3] Rachuba Decl. ¶ 9.

any of the supervisors being audited.[4]  Air Marshal Brown determined that seven supervisors, including Plaintiff, had falsified their time records, and that three other supervisors had not engaged in wrongdoing.[5]  Upon receipt of this information, Donna Rachuba, Unit Chief of the Office of Professional Responsibility for the TSA, referred the matter to TSA's Office of Investigations.[6]  On May 7, 2008, Plaintiff gave an interview and a sworn statement to the investigators in which she denied any wrongdoing.[7]  Ms. Rachuba, after reviewing the records for the dates identified in Air Marshal Brown's report, determined the amount of falsified time by the supervisors on those dates, and prepared Notices of Proposed Removal, which were issued by William Myers, the Acting Assistant Federal Security Director for Screening.[8]

The Notice of Proposed Removal was issued to Plaintiff on July 2, 2008.[9]  On July 16, 2008, Plaintiff presented an oral reply to the proposed removal; she was represented by counsel at the proceeding held before Ms. Rachuba and George Clisby, the Acting Deputy Federal Security Director.[10]  Plaintiff explained that her former manager, Richard Rowe, who died in 2007, had authorized her to work at home.[11]  On October 8, 2008, Mr. Clisby issued a Notice of Decision on Proposed Removal, which stated that Plaintiff had been paid for time that she did not work, Plaintiff's explanation that she had performed work at home was not credible, and

---

[4] Rachuba Decl. ¶ 10.

[5] Rachuba Decl. ¶¶ 12-13.

[6] Rachuba Decl. ¶ 15.

[7] Rachuba Decl. ¶ 17.

[8] Rachuba Decl. ¶¶ 21-22.

[9] Def. Ex. 5.

[10] Rachuba Decl. ¶¶ 23, 28-29.

[11] Pl.'s Statement of Facts ¶ 13.

Plaintiff failed to acknowledge any wrongdoing or accept responsibility such that her potential for rehabilitation was poor.[12]  The Notice of Decision stated that Mr. Clisby also considered whether alternative sanctions would be effective, as well as mitigating factors including Plaintiff's length of service, otherwise satisfactory performance record, and the absence of formal discipline.[13]  The final decision was that Plaintiff would be removed from the federal service.[14]

Notices of Proposed Removal were issued to four of the other implicated TSA supervisory officers as well (the two other supervisors under investigation resigned).[15]  Three of these supervisors were also fired by the TSA.[16]  The fourth, whose initials are "CH," was not fired.  According to the Notice of Reduction in Pay Band and Pay Rate issued to CH on September 23, 2008, CH was paid for time that he did not work.[17]  The decision also stated that at his oral reply, CH offered certain justifications for his actions, including his belief that his manager had the authority to dismiss him up to 59 minutes early without charging leave, a belief supported by a sworn statement from the manager.[18]  In assessing the same factors applied to Plaintiff, the decision stated that CH admitted that he made a mistake and promised that if retained he would not repeat the conduct, that CH had a two-day suspension in 2006 for failing to follow standard operating procedure and failing to provide positive leadership, and considered

---

[12] Def. Ex. 6 at 10-11.

[13] Def. Ex. 6 at 12.

[14] Def. Ex. 6 at 13.

[15] Rachuba Decl. ¶¶ 20, 22.

[16] Def.'s Statement of Facts ¶ 77.

[17] Def. Ex. 8.

[18] Def. Ex. 8 at 7.

his length of service and otherwise satisfactory performance.[19]   The final decision as to CH was not removal from the federal service, but a demotion to Lead Transportation Security Officer.[20] CH's manager, who also accepted responsibility for his actions, was demoted for failure to perform his managerial responsibilities properly.[21]

## II.   STANDARD OF REVIEW

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[23] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[24]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[25] Further, a court may not weigh the evidence or make credibility determinations.[26] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[27] "If the evidence is merely colorable, or is not

---

[19] Def. Ex. 8 at 9-10.

[20] Def. Ex. 8 at 10.

[21] Rachuba Decl. ¶ 48 and Ex. I.

[22] Fed. R. Civ. P. 56(a).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[24] *Id.*

[25] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[26] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

significantly probative, summary judgment may be granted."[28]  This requirement upholds the

"underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it

is unnecessary and would only cause delay and expense."[29] Therefore, if, after making all

reasonable inferences in favor of the non-moving party, the court determines that there is no

genuine dispute as to any material fact, summary judgment is appropriate.[30]

## III.   DISCUSSION

Discrimination claims are analyzed under the familiar burden-shifting framework

articulated in *McDonnell Douglas Corp. v. Green*.[31]  Plaintiff must first make out a *prima facie*

case of discrimination, after which the burden of production shifts to Defendant to articulate a

non-discriminatory reason for the adverse employment actions, and then the burden shifts back

to Plaintiff to show that the proffered explanations are pretextual.[32]

The Third Circuit has characterized the *prima facie* case requirement as posing a "low

bar."[33]  In order to establish a *prima facie* claim in the employment context, Plaintiff must show

(1) that she belongs to a protected class; (2) that she was qualified for the position; and (3) that

she was subject to an adverse employment action; (4) under circumstances that raise an inference

of intentional discrimination.[34]  For purposes of summary judgment, there is no dispute that

---

[28] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[29] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976)).

[30] *Wisniewski v. Johns–Manville Cor*p., 812 F.2d 81, 83 (3d Cir. 1987).

[31] 411 U.S. 792, 802-03 (1973).

[32] *Id.*

[33] *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

[34] *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

Plaintiff can meet the first three elements.  Thus, the question is whether the circumstances of Plaintiff's termination give rise to an inference of discrimination.

An inference of discrimination "could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar . . . discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting . . . animus."[35]  Plaintiff argues that CH is a comparator, as he was charged with the same type of misconduct as Plaintiff, he is a man and of a different race from Plaintiff (who describes herself in the Complaint as Hispanic/Native American),[36] and he was not fired.   Defendant argues that CH was not similarly situated to Plaintiff, because he took responsibility for his actions and therefore demonstrated his potential for rehabilitation.  Under the circumstances of this case, where all of the supervisors were charged with similar conduct stemming from a single investigation, the Court concludes that the accused supervisors were all similarly situated for purposes of establishing a *prima facie* case.[37]   Therefore, the reasons why CH was demoted instead of removed from service with the other supervisors are better assessed by shifting the burden of production to Defendant to "offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision."[38]

---

[35] *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)).

[36] Compl. ¶ 7.

[37] *See Francis v. Lehigh Univ.*, 561 F. App'x 208, 211 (3d Cir. 2014) (assessing whether an alleged comparator "accepted responsibility for his behavior and even went so far as to propose remedial actions for his conduct" was similarly situated in the context of  whether the explanation for the plaintiff's termination was pretexual).

[38] *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 465 (3d Cir. 2005) (internal citations, brackets, and quotation marks omitted).

Defendant has met this burden.  The determinations made by Mr. Clisby show that he assessed the supervisors' conduct, the proffered justifications, past disciplinary records, and evidence in mitigation.  Mr. Clisby stated that he did not accept Plaintiff's explanation that her supervisor Mr. Rowe had authorized her to work at home because there was no documentation supporting the claim, because Plaintiff did not have access to the TSA computer system from her home, and because the work that Plaintiff claimed to have done at home would not have been completed during the time periods in question.[39]  Although it is unfortunate that the supervisor who Plaintiff claims authorized her to work at home passed away and therefore could not support or refute her claim, the Notice of Decision set forth the reasons why Mr. Clisby concluded that Plaintiff's explanation was not credible.

In contrast, CH's belief that his supervisor could authorize his dismissal up to 59 minutes early without charging him leave was supported by a sworn statement from the manager, who was disciplined for his failure to manage appropriately.  Most significantly, according to the evidence, only CH accepted responsibility, and promised there would be no repeat of the conduct if he were retained.   It was entirely appropriate for CH to be treated differently on this basis. [40]

Thus, the burden falls to Plaintiff to cast sufficient doubt on this explanation to create an issue for trial.  Plaintiff may "meet this burden and defeat a motion for summary judgment by providing evidence that would allow a fact finder reasonably to (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not the motivating or determinative cause of the employer's action."[41]

---

[39] Def. Ex. 6 at 10-11.

[40] *See Francis*, 561 F. App'x  at 211.

[41] *Sarullo,* 352 F.3d at 799-800 (internal quotation marks and citations omitted).

Plaintiff largely focuses on evidence that she argues establishes that CH should have been charged with more violations of time reporting than he was.  But Air Marshal Brown averred in his declaration that his "focus in the audit was not to come up with every possible time any employee might potentially have falsified his or her time records, but to identify those days when it seemed clear that the employee was not actually at work when they were supposed to be working."[42] Air Marshal Brown also averred that he did not know anyone in TSA management before conducting the audit, that he did not know any of the supervisors or their race when he was conducting the audit, and that he applied the same standards during the audit to each of the supervisors.[43]  Plaintiff's criticisms of the thoroughness of the audit and the investigation in general may constitute evidence of unfairness, but there is no evidence of discriminatory purpose, particularly as it does not appear from the decisions to remove or demote the supervisors that the number of incidents was a significant factor.

Plaintiff also argues that Mr. Clisby excused some of CH's conduct based only on CH's explanation, but did not accept any of Plaintiff's explanations.  However, in the final decisions, Mr. Clisby examined each of the proffered justifications in sustaining or not sustaining the charges of falsifying time.  Plaintiff and CH offered different justifications, and the Court cannot conclude that individual treatment warrants an inference of discrimination, particularly in consideration of the fact that some of CH's justifications were supported by a sworn statement from his manager, and others were supported by the time records showing CH had come in early on certain dates.  Various charges against CH were sustained.[44]  Plaintiff's assertions that Mr.

---

[42] Brown Decl. ¶ 6.

[43] Brown Decl. ¶¶ 4-5, 7.

[44] Def. reply ex G at 7.

Clisby intentionally failed to apply the same standards that were applied against other supervisors are not supported by the evidence in the record, which shows that Mr. Clisby undertook the same analysis with regard to each of the accused supervisors, and that only CH accepted responsibility for some of his actions.  Plaintiff has failed to "discredit[] the proffered reasons" through direct or circumstantial evidence or "adduc[e] evidence . . . that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[45]

Plaintiff raises two incidents unrelated to the time sheets investigation that relate to race or sex.  First, Plaintiff testified in her deposition as to an incident in 2006 when Plaintiff disciplined an employee for his appearance and said that he looked "ghetto."[46]   The employee complained about this use of language and, according to Plaintiff, Mr. Clisby demanded that Plaintiff apologize to the employee.  Plaintiff refused to apologize, and Mr. Clisby then accused Plaintiff of being a racist.[47]   Plaintiff also testified that in May 2006 she raised with TSA management (but not Mr. Clisby or others involved in the time records investigation) an issue of sexual harassment from employees of U.S. Airways who were African American, and nothing was done to investigate her allegations.[48]   Even if Mr. Clisby unfairly accused Plaintiff of being a racist, this does not constitute a previous incident of discrimination (as there was no adverse action taken against Plaintiff), and he had no role in Plaintiff's allegations that her complaints of

---

[45] *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

[46] Pl.'s Dep. at 132-33.

[47] Pl.'s Dep. at 133-34.

[48] Pl.'s Dep. at 215-16, 226.

discrimination were not pursued.[49]   Plaintiff has not linked these earlier incidents to the time records investigation in any way, and there is no evidence that the other supervisors who were terminated played any part in these incidents.

## IV.   CONCLUSION

The question to be decided is whether there is sufficient evidence from which a reasonable factfinder could conclude Plaintiff was discriminated against on the basis of race or sex.  The Court holds that there is not.   Therefore, Defendant's motion will be granted.  An order will be entered.

---

[49] *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998) (holding that a plaintiff may show that discrimination was more likely than not a cause for the employer's action by pointing to evidence that an employer previously discriminated the plaintiff).